No. 16-5527

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

CHERYL MARTIN AND ROBERT MARTIN,
                                                *Plaintiffs-Appellants*,

*v.*

CAROLYN COLVIN,
ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,
                                                *Defendant-Appellee*.

On Appeal from the United States District Court
for the Eastern District of Kentucky, No. 7:15-cv-00046
(Thapar, J.)

## BRIEF FOR PLAINTIFFS-APPELLANTS
## CHERYL MARTIN AND ROBERT MARTIN

NED PILLERSDORF
PILLERSDORF, DEROSSETT & LANE
124 West Court Street
Prestonburg, KY  41653
(606) 886-6090

DANIEL S. VOLCHOK
ARPIT K. GARG*
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C.  20006
(202) 663-6000

*\* Admitted to practice only in New York. Supervised by members of the firm who are members of the District of Columbia bar.*

June 15, 2016

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT .......................................... 1

INTRODUCTION ...................................................................... 2

JURISDICTION....................................................................... 4

ISSUE PRESENTED .................................................................... 5

STATEMENT ......................................................................... 5

    A.    Plaintiffs ....................................................... 5

    B.    Conn's Fraudulent Scheme, Ignored By SSA For Years ..................... 7

    C.    SSA Commences Redetermination Hearings ........................ 9

    D.    The Redetermination Process Produces A Crisis............................ 12

    E.    This Action ....................................................... 15

SUMMARY OF ARGUMENT ............................................................. 19

STANDARD OF REVIEW .............................................................. 20

ARGUMENT ......................................................................... 20

I.    EXHAUSTION SHOULD BE EXCUSED BECAUSE PLAINTIFFS' CLAIMS ARE COLLATERAL TO A CLAIM FOR BENEFITS AND PLAINTIFFS HAVE RAISED A COLORABLE CLAIM OF IRREPARABLE HARM...............................................................22

    A.    Plaintiffs' Claims Are Collateral Because They Are Purely Procedural And Could Not Result In Benefits ........................ 23

    B.    Plaintiffs Have Raised A Colorable Claim Of Irreparable Harm Given Their Complete Dependence On Their Disability Benefits For Their Livelihood ........................... 28

II.    EXHAUSTION SHOULD BE WAIVED BECAUSE IT WOULD BE
        FUTILE FOR PLAINTIFFS TO RAISE THEIR CLAIMS IN THE
        ADMINISTRATIVE PROCESS .............................................................................30

CONCLUSION .....................................................................................................33

DESIGNATION OF RELEVANT DISTRICT COURT
        DOCUMENTS

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Amgen, Inc. v. Kidney Center*, 95 F.3d 562 (7th Cir. 1996) .....................................5

*Askins v. Ohio Department of Agriculture*, 809 F.3d 868 (6th Cir. 2016) ............................................................................................20

*Bowen v. City of New York*, 476 U.S. 467 (1986) ................... 22, 23, 24, 25, 29, 31

*Briggs v. Sullivan*, 886 F.2d 1132 (9th Cir. 1989)...................................31

*Califano v. Sanders*, 430 U.S. 99 (1977) ...................................................31

*Cathedral Rock v. Shalala*, 223 F.3d 354 (6th Cir. 2000) ...........................22, 23, 26

*Chynoweth v. Sullivan*, 920 F.2d 648 (10th Cir. 1990) ............................................14

*Day v. Shalala*, 23 F.3d 1052 (6th Cir. 1994).................................23, 24, 25, 28, 29

*Gisbrecht v. Barnhart*, 535 U.S. 789 (2002) ...........................................................14

*Goldberg v. Kelly*, 397 U.S. 254 (1970) .................................................................10

*Heckler v. Day*, 467 U.S. 104 (1984)...................................................................30

*Heckler v. Ringer*, 466 U.S. 602 (1984) ....................................................25, 27, 32

*Hyatt v. Heckler*, 807 F.2d 376 (4th Cir. 1986) ....................................................25

*Johnson v. City of Memphis*, 617 F.3d 864 (6th Cir. 2010)....................................20

*Johnson v. Shalala*, 2 F.3d 918 (9th Cir. 1993)................................................24, 25

*Johnson v. Sullivan*, 922 F.2d 346 (7th Cir. 1990).................................................24

*Manakee Professional Medical Transfer Service, Inc. v. Shalala*, 71 F.3d 574 (6th Cir. 1995) ..............................................................23, 30, 32

*Marcus v. Sullivan*, 926 F.2d 604 (7th Cir. 1991) ..................................................24

*Mathews v. Diaz*, 426 U.S. 67 (1976) .................................................................30

*Mathews v. Eldridge*, 424 U.S. 319 (1976) .....................................19, 21, 22, 26, 28

*Michigan Ass'n of Homes & Services for Aging, Inc. v. Shalala*,
  127 F.3d 496 (6th Cir. 1997) ...........................................................27

*New York v. Sullivan*, 906 F.2d 910 (2d Cir. 1990)................................................25

*Oakland Medical Group, P.C. v. Secretary of Health & Human
  Services*, 298 F.3d 507 (6th Cir. 2002)...........................................22

*Schoolcraft v. Sullivan*, 971 F.2d 81 (8th Cir. 1992)................................................24

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) ...........................................................29

*Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1
  (2000)........................................................................................18, 21, 27, 28

*United States ex rel. Griffith v. Conn*, No. 11-cv-157, 2015 WL
  779047 (E.D. Ky. Feb. 24, 2015) .........................................................7

*Watson v. Cartee*, 817 F.3d 299 (6th Cir. 2016)....................................................20

*Weinberger v. Salfi*, 422 U.S. 749 (1975)........................................22, 27, 30, 31, 32

*Willis v. Sullivan*, 931 F. 2d 390 (6th Cir. 1991) ....................................................23

## DOCKETED CASES

*Robert Martin v. Commissioner of SSA*, No. 16-cv-111 (E.D. Ky.).........................5

*United States v. Conn*, No. 16-cr-22 (E.D. Ky.) .......................................................19

## STATUTES, RULES, AND REGULATIONS

28 U.S.C.
  §1291 .........................................................................................5
  §1331 ....................................................... 15, 17, 21, 27, 28, 32
  §1361 .................................................................................15, 17

42 U.S.C.
   §405(g) ..................................................................................*passim*
   §405(h) ................................................................................21
   §405(u) ..................................................................10, 11, 27

20 C.F.R.
   §404.1730 ..........................................................................14
   §416.989 ............................................................................12

Fed. R. App. P. 4 ....................................................................5

## OTHER AUTHORITIES

Paletta, Damian, *Disability-Claim Judge Has Trouble Saying "No,"*
   Wall St. J., May 19, 2011, *available at* http://www.wsj.com/
   articles/SB10001424052748704681904576319163605918524 ...................8

Senate Committee on Homeland Security and Governmental Affairs,
   *How Some Legal, Medical, and Judicial Professionals Abused*
   *Social Security Disability Programs for the Country's Most*
   *Vulnerable:  A Case Study of the Conn Law Firm* (Oct. 7,
   2013), *available at* http://www.hsgac.senate.gov/hearings/
   social-security-disability-benefits-did-a-group-of-judges-
   doctors-and-lawyers-abuse-programs-for-the-countrys-most-
   vulnerable..........................................................................8

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

This Court would benefit from oral argument because this is no ordinary social security appeal. The underlying case is a putative class action raising a facial challenge (principally on constitutional grounds) to the Social Security Administration's procedures for redetermining disability benefits for approximately 1,500 recipients. These procedures, as currently designed, not only violate the claimants' rights but also seriously imperil their livelihood, as most of them rely on their benefits for life's basic necessities. The mere possibility of losing these benefits has already prompted suicides.

Moreover, the jurisdictional issue on appeal is complex. The statute that confers federal court jurisdiction over social security appeals, 42 U.S.C. §405(g), requires a "final decision" from the agency, which generally entails administrative exhaustion. But federal courts may either excuse or waive such exhaustion. Whether either or both of those outcomes is warranted is an issue on which oral argument would likely assist the Court.

## INTRODUCTION

Plaintiffs Cheryl Martin and Robert Martin (who are not related) suffered debilitating accidents that rendered them unable to work.  They applied for disability benefits from the Social Security Administration (SSA), enlisting the services of Eric Conn, a prominent disability lawyer in eastern Kentucky.  The agency awarded them benefits.

Years later, SSA alleged that Conn—unbeknownst to Cheryl and Robert— had engaged in a large conspiracy to defraud the agency.  For some clients (irrespective of whether that client was actually disabled) Conn would apparently arrange for one of four doctors to write fraudulent medical reports, leading an administrative law judge (ALJ) who was involved in the conspiracy to rule in the claimant's favor.  Although whistleblowers raised allegations of Conn's misconduct as early as 2006, SSA took no action for nearly a decade.  That delay had serious (though quite foreseeable) costs:  It gave Conn, who eventually learned that his misconduct was coming to light, time to destroy most of his files.

Having allowed that to occur, the agency informed approximately 1,500 social security recipients in 2015 that it was setting aside their disability determinations because it had reason to believe there was fraud in "certain cases" filed by Conn.  SSA declared that it would conduct "redetermination" hearings in which the recipients would be required to reprove their initial (not present or

ongoing) disability without the allegedly tainted medical evidence.  Recipients would not, however, be allowed to challenge the fraud allegation.

The agency initially suspended benefits for approximately 900 of the 1,500 recipients, specifically those receiving disability benefits rather than supplemental security income.  Because many of those who were cut off have no other source of income, the threat of immediate suspension brought about a humanitarian crisis, resulting in at least two suicides.  SSA eventually lifted the immediate suspension of benefits, at the behest of two members of Congress.  But it did not otherwise alter its plan for the redetermination hearings.

Cheryl and Robert brought this putative class action on behalf of all 1,500 recipients, challenging the legality of the redetermination hearings.  In particular, they argued that the agency's approach violates the Due Process Clause because recipients are (1) not informed of the evidence underlying the agency's fraud allegation or allowed to dispute that allegation, (2) disallowed from adducing certain probative evidence of their disability, (3) granted little time or assistance to track down what remained of their medical records, and (4) provided no legal representation to help them meet the extraordinary challenge of proving they were disabled at the time of their initial application—often years earlier.

The district court dismissed the complaint for lack of jurisdiction on the ground that Cheryl and Robert had not exhausted their claims with the agency and

thus had not received a "final decision," as 42 U.S.C. §405(g) requires in order to confer federal jurisdiction. This ruling was flawed.

Exhaustion can be excused when a plaintiff seeks relief "collateral" to a claim for benefits and requiring exhaustion may cause irreparable harm. That is the situation here: Cheryl and Robert are challenging the agency's overall redetermination *process*, not a specific benefits ruling. And because they (like other members of the proposed class) rely on these benefits for their livelihood, an erroneous termination would cause them to suffer harms that retroactive benefits could not undo.

Separately, exhaustion can be waived when raising the claim in the administrative process would be futile. That too is the situation here, as SSA has made clear its unwillingness to provide the procedural protections the complaint seeks. This Court should reverse the district court's jurisdiction ruling by either excusing or waiving the exhaustion requirement, and remand for the case to proceed on the merits.

**JURISDICTION**

Whether the district court had subject-matter jurisdiction under 42 U.S.C. §405(g) is the subject of this appeal. The court dismissed the complaint for lack of jurisdiction on November 16, 2015, and denied plaintiffs' timely reconsideration motion on April 1, 2016. Plaintiffs filed a timely notice of appeal nineteen days

later.  *See* Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction under 28 U.S.C. §1291.

During the pendency of this appeal, Robert Martin exhausted his administrative proceedings (i.e., he received a "final decision" from SSA under 42 U.S.C. §405(g)) and filed a district court action challenging the agency's decision. *See* Complaint, *Robert Martin v. Commissioner of SSA*, No. 16-cv-111 (E.D. Ky. June 3, 2016), ECF 1.  That does not moot this appeal because Cheryl Martin has not exhausted.  In the event that she receives a final decision before the Court can resolve this appeal, plaintiffs request that the Court retain jurisdiction and remand this case to the district court to allow plaintiffs to amend their pleadings to add additional class representatives who have not exhausted their administrative relief. *See Amgen, Inc. v. Kidney Ctr.*, 95 F.3d 562, 568 (7th Cir. 1996) (employing similar procedure to "make the proceedings in this case more efficient").

## ISSUE PRESENTED

Whether the exhaustion requirement in 42 U.S.C. §405(g) should be excused or waived in this case.

## STATEMENT

### A.    Plaintiffs

Cheryl Martin worked in various jobs in the West Virginia area for approximately forty years.  Cheryl Martin Aff. to Compl., RE 1-1, PageID# 15.

After an automobile accident inflicted serious injuries that rendered her unable to work, she hired Conn to represent her in seeking social security disability benefits, unaware of his allegedly fraudulent practices.  Compl., RE 1, PageID# 4.  In 2009 the agency awarded her benefits.  *Id.*

Cheryl cannot live without these benefits.  Shortly after her benefits award, she was diagnosed with lung cancer.  Compl., RE 1, PageID# 5.  She has been prescribed 22 medications, the out-of-pocket cost of which exceeds $600 each month.  *Id.*  That represents more than half of her monthly $1,100 benefits payment.  *Id.*  If she were to lose her benefits, she simply could not afford her medications.  *Id.*

Robert Martin faces similar circumstances.  He was a truck driver for twenty-two years before being severely injured in a trucking accident.  Robert Martin Aff. to Compl., RE 1-4, PageID# 23.  And he also retained Conn when seeking disability benefits, which were awarded in 2009.  *Id.*

Like Cheryl, Robert faces dire challenges were he to lose his $1,400 monthly benefit.  Because he has no other source of income, he would be unable to make his house payments, rendering him homeless.  Robert Martin Aff. to Compl., RE 1-4, PageID# 23.  He is also afflicted with lung cancer (having already suffered through a battle with colon cancer that cost him the right side of his colon).  *Id.*  If

his disability benefits were terminated, he might lose his Medicare coverage and would have no money to pay for his cancer medications. *Id.*

### B.    Conn's Fraudulent Scheme, Ignored By SSA For Years

Unbeknownst to either Cheryl or Robert, Eric Conn was allegedly engaged in a large conspiracy to defraud the SSA. The full details of his fraud have not been made public, but it appears that Conn arranged with four doctors (usually Dr. Frederic Huffnagle) to submit fraudulent medical reports about some of his clients, and also arranged with a local ALJ (David Daugherty) to approve his clients' disability requests. *See* Jamie Slone Aff., RE 4-4, PageID## 67-76; Melinda Martin Aff., RE 4-5, PageID## 77-85.

Crucial details of the fraud, however, remain unclear. For example, it is not known whether all or only some of the medical reports prepared by these doctors on behalf of a Conn client were fraudulent. Similarly, it is not established why and how Conn selected specific clients to receive fraudulent reports, particularly in light of subsequent determinations that many of these individuals were genuinely disabled (and hence did not need fraudulent reports).

What is clear is that allegations of Conn's misconduct slowly came to light. Beginning in 2006, multiple whistleblowers within SSA came forward and raised concerns about Daugherty and Conn to their supervisors. *See United States ex rel. Griffith v. Conn*, No. 11-cv-157, 2015 WL 779047, at *1-2 (E.D. Ky. Feb. 24,

2015). Based in part on these whistleblowers, a 2011 *Wall Street Journal* article reported that Daugherty had an incredibly high approval rate and speculated that he and Conn had a special arrangement. *See* Paletta, *Disability-Claim Judge Has Trouble Saying "No,"* Wall St. J., May 19, 2011.[1] Two years later, the Senate released a lengthy report documenting Conn's abuses and heard testimony on the matter. *See* Senate Committee on Homeland Security and Governmental Affairs, *How Some Legal, Medical, and Judicial Professionals Abused Social Security Disability Programs for the Country's Most Vulnerable: A Case Study of the Conn Law Firm* (Oct. 7, 2013).[2] Yet SSA apparently took no action.

The lost time was costly. It allowed Conn to destroy virtually all of his files, both physical and electronic. *See* Jamie Slone Aff., RE 4-4, PageID## 67-76; Melinda Martin Aff., RE 4-5, PageID## 77-85. Further, as time passed, medical records from treating physicians were lost due to health practices moving, closing, or purging records per routine document-destruction policies. *See, e.g.*, Dale Slone Decl., RE 23-1, PageID## 313-314. For example, Dr. Huffnagle died in that time period, and his medical records were apparently destroyed when his office closed.

---

[1]    *Available at* http://www.wsj.com/articles/SB10001424052748704681904576319163605918524.

[2]    *Available at* http://www.hsgac.senate.gov/hearings/social-security-disability-benefits-did-a-group-of-judges-doctors-and-lawyers-abuse-programs-for-the-countrys-most-vulnerable.

## C.    SSA Commences Redetermination Hearings

In May 2015, SSA finally took action—but not against Conn.  It instead sent notices to approximately 1,500 social security claimants (including Cheryl and Robert), informing them that it would reconsider their benefits.  Am. Compl., RE 11, PageID# 128.  The notices advised that SSA's Office of Inspector General (OIG) had informed the agency that "there was reason to believe fraud was involved in certain cases including evidence" from Drs. Huffnagle, Bradley Adkins, Srinivas Ammisetty, and David Herr.  SSA Letter to Cheryl Martin, RE 1-2, PageID# 17.  Each notice further stated that, because one of these doctors "provided evidence in your case," the agency would be redetermining benefits.  *Id.*

For 900 of the 1,500 recipients who received redetermination notices, SSA also decided that it would suspend benefits immediately.  Many of these 900— given no specifics about the alleged fraud, and faced with the loss of what for most was their only income—fell into despair.  *See* Cheryl Martin Aff. to Reply ISO Second Prelim. Inj. Mot., RE 21-1, PageID## 300, 303.  At least two committed suicide.  Am. Compl., RE 11, PageID# 128.  Finally, at the urging of Representatives Hal Rogers of Kentucky and Evan Jenkins of West Virginia, the agency lifted the immediate suspension.  *Id.* [3]

---

[3]    The 900 individuals receive social security disability benefits under Title II of the Social Security Act, as opposed to the remaining 600 who receive supplemental security income under Title XVI of the Act.  The government

SSA has since revealed (through this litigation) that in May 2015 it received a referral from OIG concluding that in certain cases the four doctors named in the notices supplied Conn with fraudulent medical reports.  Beatrice Disman Decl. to Reply ISO Mot. To Dismiss, RE 30-1, PageID## 429-430.  The agency viewed the referral as establishing that there was "reason to believe that fraud or similar fault was involved in" the identified cases, 42 U.S.C. §405(u)(1)(A), thus requiring the agency to "immediately redetermine the entitlement of individuals to monthly insurance benefits," *id.*  SSA did not inform the recipients of this fraud allegation, present them with the OIG report or findings, or provide them with any opportunity to dispute the fraud allegation.  (The OIG report itself is not publicly available, nor has it been disclosed to plaintiffs in this litigation, despite specific requests.  Cheryl Martin Aff. to Reply ISO Second Prelim. Inj. Mot., RE 21-1, PageID# 302.)  Consequently, even a Conn client who had a legitimate medical report from one of these four doctors was irrefutably presumed to have been tainted by Conn's scheme.

After presuming fraud, SSA reviewed the cases that OIG identified to determine whether, after excluding the allegedly tainted evidence, there was sufficient evidence to support the disability determination.  Beatrice Disman Decl.

_____

acknowledged that it could not immediately suspend benefits for the 600 claimants under *Goldberg v. Kelly*, 397 U.S. 254 (1970).  *See* Opp. to Second Prelim. Inj. Mot., RE 15, PageID# 183 n.1.

to Opp. to Second Prelim. Inj. Mot., RE 15-1, PageID# 211.  This was pursuant to the Social Security Act's mandate that, "[w]hen redetermining the entitlement … the [agency] shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence."  42 U.S.C. §405(u)(1)(B).  Although a few hundred cases survived this review, approximately 1,500 did not.  Those were the 1,500 individuals who received notice of a formal redetermination process.  *See* Beatrice Disman Decl. to Opp. to Second Prelim. Inj. Mot., RE 15-1, PageID# 211; Beatrice Disman Decl. to Reply ISO Mot. To Dismiss, RE 30-1, PageID## 429-430.

That process was as follows:  The agency gave each affected recipient an opportunity to submit new evidence.  Beatrice Disman Decl. to Opp. to Second Prelim. Inj. Mot., RE 15-1, PageID## 212-214.  If that evidence was insufficient to support the initial disability determination—again, meaning not that the individual was currently disabled but that he or she was disabled at the time benefits were granted—SSA would send the case to an ALJ for a redetermination hearing.  *Id.* During the hearing, the claimant could present any additional evidence to support the prior disability determination.  *Id.*  ALJs were not, however, permitted to reconsider the (ex parte) fraud determination that led to the exclusion of the original medical evidence.  *See* Mem. ISO Mot. To Alter or Amend, RE 35-1, PageID## 451-452; Goss Aff., RE 35-2, PageID## 462-463, 475; Def.'s Suppl.

Mem., RE 26, PageID## 358-360; Reply ISO Mot. To Dismiss, RE 30, PageID## 413-415, 421; Opp. to Mot. To Alter or Amend, RE 36, PageID## 487-488; 8/10/2015 Hrg. Tr., RE 45, PageID# 556.  Nor was medical evidence resulting from the agency's "continuing disability review" process admissible, because that would not bear on that initial disability determination.  *See* Opp. to Second Prelim. Inj. Mot., RE 15, PageID# 199.[4]

> **D.      The Redetermination Process Produces A Crisis**

As discussed, SSA's redetermination process has caused great turmoil among the putative class.  *See, e.g.*, Cheryl Martin Aff. to Reply ISO Second Prelim. Inj. Mot., RE 21-1, PageID## 300, 303.  Two aspects of the process caused particular concern:  the logistical challenges in acquiring relevant medical records, and insufficient legal representation.

As to the former:  Because SSA is redetermining disability at the time of application, rather than presently, claimants must acquire medical evidence that existed when they initially applied for benefits.  But they face serious impediments in procuring their old medical records, the first being frequent unavailability.

---

[4]      As the name suggests, a "continuing disability review" is when the agency "evaluate[s] [a claimant's] impairment(s) … to determine if [he or she is] still eligible for payments based on disability."  20 C.F.R. §416.989.  The agency has already subjected many, if not most, of the putative class members (including Robert Martin) to a continuing disability reviews, which they passed.  *See* Robert Martin Aff. to Second Prelim. Inj. Mot., RE 12-1, PageID# 148; Cheryl Martin Aff. to Reply ISO Second Prelim. Inj. Mot., RE 21-1, PageID# 302.

Many claimants provided all of their medical evidence to Conn (*see, e.g.*, Dale Slone Decl., RE 23-1, PageID# 314), who destroyed virtually all of his files. *See supra* p. 5. Cheryl Martin, for example, personally went to Conn's office to retrieve her records and was told none were available. Cheryl Martin Aff. to Second Prelim. Inj. Mot., RE 12-2, PageID# 151. In any event, SSA has advised claimants that it will not accept records acquired from Conn's office. Cheryl Martin Aff. to Reply ISO Second Prelim. Inj. Mot., RE 21-1, PageID## 300-301. Other copies of these medical records, meanwhile, have become increasingly difficult to obtain in the last decade due to practice closure and routine document destruction. *See supra* p. 5.

Even records that could be located are as a practical matter unavailable for many (if not most) of the impoverished, disabled members of the putative class. Dale Slone, for example, is so disabled that he was forced to rely on others to drive him to various medical appointments to recover the records, which created delays and expenses. Dale Slone Decl., RE 23-1, PageID# 313. Furthermore, he had to borrow $35 to pay for a copy of his medical records from one provider; another provider would have charged him $0.40 per page, which he could not afford. *Id*. Slone's challenges in completing the otherwise ordinary task of retrieving medical records are typical among the putative class. *See* Cheryl Martin Aff. to Reply ISO Second Prelim. Inj. Mot., RE 21-1, PageID# 300.

Claimants who acquire relevant medical evidence, moreover, still face the extraordinary challenge of navigating "a complex statutory and regulatory framework," *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (10th Cir. 1990), without legal representation. Because of their severe disabilities and limited literacy, putative class members are not typically capable of representing themselves. *See* Mem. ISO Second Prelim. Inj. Mot., RE 12-4, PageID# 163 (many "cannot read or write"). If these were initial disability determinations, claimants could rely on the sophisticated private social security bar to guide them through the administrative process—a bar that participates because counsel can be compensated with 25 percent of "past due" benefits (i.e., backpay), up to a statutory maximum per case. *See* 20 C.F.R. §404.1730; *Gisbrecht v. Barnhart*, 535 U.S. 789, 795 (2002). Redetermination hearings, by contrast, offer no opportunity for backpay, and thus the private bar has no financial incentive to assist the needy putative class members. *See* Am. Compl., RE 11, PageID# 136. Nor, of course, are these impoverished individuals able to pay attorneys out-of-pocket. Cheryl Martin Aff. to Reply ISO Second Prelim. Inj. Mot., RE 21-1, PageID# 300.

The burden thus fell on local legal aid attorneys, who were quickly overwhelmed by the challenge of providing assistance, largely simultaneously, to almost 1,500 individuals in a concentrated geographical area. Robert Johns, the executive director of the Appalachian Research and Defense Fund, described it as a

"representational crisis of enormous proportions," adding that "[t]here are simply not enough attorneys … to go around."  Robert Johns Aff., RE 12-3, PageID## 154, 155.  Despite a herculean effort to recruit volunteer counsel, *see id.*, there were only enough attorneys to represent approximately half of the putative class.  Pls.' Status Report, RE 31, PageID# 433.

### E.    This Action

Cheryl and Robert filed this action in response to SSA's suspension of their benefits.  Compl., RE 1.  When the agency reversed course and lifted the suspension, they amended their complaint to challenge the process by which redeterminations were occurring.  Am. Compl., RE 11.  The amended complaint alleged jurisdiction under 42 U.S.C. §405(g) as well as 28 U.S.C. §§1331 and 1361.  *Id*. at PageID# 129.

Cheryl and Robert challenged four particular aspects of the redetermination process.  First, they argued that they should be informed of the evidence underlying the agency's fraud allegation and provided an "opportunity to rebut" that allegation.  Am. Compl., RE 11, PageID# 138; *see also* Mem. ISO Second Prelim. Inj. Mot., RE 12-4, PageID## 167-168; Reply ISO Second Prelim. Inj. Mot., RE 21, PageID## 283, 286, 289-290; Mem. ISO Mot. To Alter or Amend, RE 35-1, PageID## 449-460; Reply ISO Mot. To Alter or Amend, RE 37, PageID##502-506.  Second, they argued that claimants should be allowed to

submit, as evidence in their redetermination hearings, the fact that they received a favorable finding in a continuing disability review.  Am. Compl., RE 11, PageID# 137; *see also* Reply ISO Second Prelim. Inj. Mot., RE 21, PageID## 291-292; Mem. ISO Mot. To Alter or Amend, RE 35-1, PageID# 454.  Third, they contended that claimants should be granted more time and greater assistance in acquiring relevant medical records.  Am. Compl., RE 11, PageID## 139-140; *see also* Mem. ISO Second Prelim. Inj. Mot., RE 12-4, PageID## 163-164, 169-170, 172; Reply ISO Second Prelim. Inj. Mot., RE 21, PageID## 289, 291, 293-294; Reply ISO Mot. To Alter or Amend, RE 37, PageID# 503.  Fourth, they argued that given the complexity of the legal issue and the practical inability of class members to represent themselves, legal representation should be provided.  Am. Compl., RE 11, PageID## 136-140; *see also* Mem. ISO Second Prelim. Inj. Mot., RE 12-4, PageID## 163-164, 169-170, 172; Reply ISO Second Prelim. Inj. Mot., RE 21, PageID## 289, 291, 295-296; Mem. ISO Mot. To Alter or Amend, RE 35-1, PageID## 449, 457; Reply ISO Mot. To Alter or Amend, RE 37, PageID## 508-509.  These procedural protections, plaintiffs asserted, were required by the Due Process Clause, the Social Security Act, and the agency's own regulations.  Am. Compl., RE 11, PageID## 138-140.[5]

---

[5]    Cheryl and Robert also cited the Equal Protection Clause and the Americans with Disabilities Act.  Am. Compl., RE 11, PageID## 138, 140.

The district court concluded that it lacked jurisdiction over plaintiffs' claims. As to 42 U.S.C. §405(g), the district court ruled that plaintiffs had not exhausted their claims because they had not received a "final decision" on their benefits claims. Mem. Op. Granting Mot. To. Dismiss, RE 33, PageID## 438-439. The court then considered whether exhaustion should be excused because plaintiffs' claims (1) were "entirely collateral" to a "substantive claim for benefits" and (2) raise a "'colorable claim' that erroneous termination would damage [them] in a way retroactive payments could not correct." *Id.* at PageID# 439. The court reasoned that plaintiffs' claims were not "entirely collateral," because if their "challenge to the [agency's] decision to reopen their cases" were successful, their disability benefits would continue. *Id.* at PageID# 440. The court also believed that resolving plaintiffs' claims would require a determination of whether plaintiffs were, in fact, disabled. *Id.* at PageID## 440-441. Finally, the court rejected plaintiffs' claim that jurisdiction existed under 28 U.S.C. §§1331 and 1361. *Id.* at PageID## 443-445.

Cheryl and Robert moved for reconsideration, arguing principally that the district court had misconstrued their claims. Mot. To Alter or Amend, RE 35. They were not, they explained, asking the court either to block the redetermination hearings entirely or to resolve whether they were disabled. Reply ISO Mot. To Alter or Amend, RE 37, PageID# 502. Rather, they wanted procedural protections,

- 17 -

such as being "allow[ed] to challenge the allegations of fraud *directly* in the ALJ hearings." *Id.* They further argued that exhaustion was futile in these circumstances. *Id.* at PageID## 512-513.

The district court denied reconsideration. It agreed that plaintiffs proved irreparable harm but not that their claims were collateral. Mem. Op. Denying Reconsideration Mot., RE 40, PageID## 527-528. The court described Cheryl and Robert as bringing two types of claims: first, a claim to make "ALJs consider the allegedly fraudulent evidence from the four doctors and make an independent credibility determination of that evidence during the hearings"; and second, to rule on whether the agency "rightfully reopened" their cases. *Id.* at PageID# 528. It ruled the latter claim was not collateral for the same reason as before. *Id.* at PageID## 529-530. As to the former claim, the court recognized that it was a facial challenge—not a direct challenge to a benefit denial—but ruled that even facial constitutional and statutory challenges must be "channeled" into the administrative process. *Id.* at PageID## 528-529 (quoting *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 8, 10 (2000)). Finally, it rejected plaintiffs' futility argument, believing that ALJs could develop a record on plaintiffs' claims and that "futility alone is not sufficient to justify an exception to administrative exhaustion." Mem. Op. Denying Reconsideration Mot., RE 40,

PageID## 531-532; *see also id.* at PageID## 526-527.  Plaintiffs timely appealed.

Notice of Appeal, RE 41.[6]

## SUMMARY OF ARGUMENT

The district court's ruling that it lacked jurisdiction under 42 U.S.C. §405(g) because plaintiffs had not exhausted their claims was erroneous.  Exhaustion can be excused or waived, and the requirements for both are met in this case.

Exhaustion is excused when a plaintiff raises claims "collateral" to a substantive claim for benefits and makes a colorable argument of irreparable harm. *Mathews v. Eldridge*, 424 U.S. 319, 330-331 (1976).  Plaintiffs' claims here are collateral because they are procedural and would not, if resolved favorably, entitle plaintiffs to benefits.  And because plaintiffs rely on disability benefits for their acute medical needs and the other necessities of life, an erroneous termination would—as the district court concluded—cause irreparable harm, i.e., harm that could not be remedied by a retroactive benefits award.

Exhaustion may be waived when it would be futile to proceed through the administrative process.  That is the situation here, because SSA will not modify its

---

[6]     On the same day that the district court denied reconsideration, the federal government filed an 18-count indictment against Conn, Daugherty, and Dr. Adkins.  *See* Indictment, *United States v. Conn*, No. 16-cr-22 (E.D. Ky. Apr. 1, 2016).  The indictment provides few additional details into Conn's misconduct, although it confirms that Conn destroyed a significant quantity of his files, *id.* at 16, 21.  Notably, the indictment does not allege that any of the putative class members participated in, or were even aware of, Conn's fraudulent scheme.

approach based on plaintiffs' complaints.  Moreover, because Cheryl and Robert raise largely constitutional claims, the agency has no particular expertise here.  Nor is there any need to compile an administrative record; plaintiffs are challenging the process itself.

## STANDARD OF REVIEW

This Court "review[s] de novo the existence of subject-matter jurisdiction." *Watson v. Cartee*, 817 F.3d 299, 302 (6th Cir. 2016).  "When a trial court's ruling on jurisdiction is based in part on the resolution of factual disputes, a reviewing court must accept the district court's factual findings, unless they are clearly erroneous, and review the district court's application of the law to the facts *de novo*."  *Askins v. Ohio Dep't of Agric.*, 809 F.3d 868, 872 (6th Cir. 2016).  And although this Court "generally review[s] a denial of a motion to alter or amend a judgment under Rule 59(e) for abuse of discretion, when the Rule 59(e) motion seeks review of a grant of summary judgment" (which is analogous to the jurisdictional ruling here), this Court "appl[ies] a *de novo* standard of review." *Johnson v. City of Memphis*, 617 F.3d 864, 867 (6th Cir. 2010) (internal quotation marks omitted).

## ARGUMENT

Unlike most challenges arising under federal law, challenges to decisions of the SSA are usually not brought under the general federal-question jurisdiction

statute, 28 U.S.C. §1331. That is because the Social Security Act forecloses "any action against the [agency] under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter." 42 U.S.C. §405(h). Instead, 42 U.S.C. §405(g) creates federal jurisdiction over social security claims by permitting dissatisfied claimants to file a "civil action" "after any final decision of the Commissioner of Social Security." As the Supreme Court has explained, the Act thus "channels most, if not all, [social security] claims" through the administrative process and "purports to make exclusive the judicial review method set forth in § 405(g)." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 8, 10 (2000).

A "final decision" under §405(g) "consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular case." *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976). "The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary." *Id.* "The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted." *Id.* Because presentment is easily satisfied here—Cheryl and Robert disputed the agency's redetermination notice, *see id.* at 323-324 (finding presentment on identical grounds)—this case turns on exhaustion.

Although plaintiffs have not exhausted the administrative process, courts may either excuse or waive the exhaustion requirement. Both doctrines apply here, and thus the district court has jurisdiction under 42 U.S.C. §405(g).

## I.    EXHAUSTION SHOULD BE EXCUSED BECAUSE PLAINTIFFS' CLAIMS ARE COLLATERAL TO A CLAIM FOR BENEFITS AND PLAINTIFFS HAVE RAISED A COLORABLE CLAIM OF IRREPARABLE HARM

Ordinarily, courts defer to SSA's determination of what constitutes exhaustion and thus a "final decision" under 42 U.S.C. §405(g). *See Weinberger v. Salfi*, 422 U.S. 749, 766-767 (1975). But "cases may arise where a claimant's interest in having a particular issue resolved is so great that deference to the agency's judgment is inappropriate." *Eldridge*, 424 U.S. at 330. In such cases, courts "require[] the [agency] to excuse some of its procedural requirements so that its decision would be considered a 'final decision' and judicial review could follow under § 405(g)." *Cathedral Rock v. Shalala*, 223 F.3d 354, 362 (6th Cir. 2000).

Under *Eldridge*, courts apply a two-part requirement for excusing exhaustion. First, the plaintiff's claim must be "'entirely collateral' to his substantive claim of entitlement." *Oakland Med. Grp., P.C. v. Secretary of Health & Human Servs.*, 298 F.3d 507, 510 (6th Cir. 2002) (citing *Eldridge*, 424 U.S. at 330-332). Second, the plaintiff must make "a colorable claim that he could not obtain full relief through retroactive benefits awarded in a post-deprivation hearing." *Id.*; *see also Bowen v. City of New York*, 476 U.S. 467, 476 (1986)

(describing the second element as whether "the harm imposed by exhaustion would be irreparable").  Both requirements are satisfied here.

### A.    Plaintiffs' Claims Are Collateral Because They Are Purely Procedural And Could Not Result In Benefits

1.    A claim involving SSA is collateral if the plaintiffs "do not seek to be found eligible for benefits …, but rather challenge the procedure by which eligibility determinations were made."  *Day v. Shalala*, 23 F.3d 1052, 1059 (6th Cir. 1994); *see also Bowen*, 476 U.S. at 483 (claim was collateral because plaintiff class "neither sought nor were awarded benefits … but rather challenged the [agency's] failure to follow the applicable regulations").  By contrast, a claim is not "entirely collateral" when "favorable resolution of th[e] claim would result in the reinstatement [of benefits]."  *Cathedral Rock*, 223 F.3d at 363.  The claims here are collateral for three reasons.

*First*, Cheryl and Robert have not sought a ruling that they are entitled to disability benefits.  *See Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 580 (6th Cir. 1995) (rejecting claim as collateral where "plaintiffs sought an award of benefits in district court"); *Willis v. Sullivan*, 931 F.2d 390, 399 (6th Cir. 1991) (same, collecting cases).  The amended complaint requested only declaratory and injunctive relief requiring the government's redetermination hearings to comply with "procedural due process and [c]onstitutional safeguards."  Am. Compl., RE 11, PageID# 141.  Plaintiffs' preliminary-injunction motion

similarly asked the court to order the government to suspend its hearings "until" the government provided due process protections "at all critical stages of the proceedings."  Second Prelim. Inj. Mot., RE 12, PageID# 145.

*Second*, irrespective of what the complaint requested, a favorable resolution of their claims would not entitle Cheryl and Robert to benefits.  As explained, plaintiffs seek four fundamental changes in the agency's redetermination process: (1) access to the agency's evidence of fraud and an opportunity to rebut the fraud allegation, (2) allowing ALJs to consider evidence that claimants successfully passed a continuing disability review; (3) additional time and assistance in finding old medical records; and (4) pro bono legal representation to navigate these complex proceedings.  If Cheryl and Robert prevail and a court orders the agency to revise its procedures accordingly, they would "not automatically be entitled to receive benefits … but only to receive 'the procedure they should have been accorded in the first place.'"  *Day*, 23 F.3d at 1059 (quoting *Bowen*, 476 U.S. at 484).  "'Thus, the plaintiff[s'] attack is essentially to the policy itself, not to its application to them, nor to the ultimate substantive determination of their benefits.'"  *Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993) (quoting *Johnson v. Sullivan*, 922 F.2d 346, 353 (7th Cir. 1990) (en banc)).[7]

---

[7]    As this Court observed in *Day*, many other circuits have similarly held that procedural challenges are collateral to a claim for benefits.  *See, e.g.*, *Schoolcraft v. Sullivan*, 971 F.2d 81, 86 (8th Cir. 1992); *Marcus v. Sullivan*, 926 F.2d 604, 614

*Bowen v. City of New York* provides an instructive parallel.  The class plaintiffs there alleged that the agency had adopted a "systemwide, unrevealed policy that was inconsistent in critically important ways with established regulations," 476 U.S. at 485, and they sought an injunction directing the agency to re-open many cases and follow its regulations, *id.* at 476, 485.  In deeming this claim collateral, the Supreme Court distinguished it from a claim alleging "mere deviation from the applicable regulations" or "depend[ing] on the particular facts of the case before it."  *Id.* at 484-485.  Similarly here, Cheryl and Robert are not challenging the application of a regulation or bringing a fact-specific claim.  Rather, as in *Bowen*, they are bringing a systemwide, facial challenge to the process underlying the agency's redetermination hearings.

The systemic nature of plaintiffs' claims distinguishes this case from *Heckler v. Ringer*, 466 U.S. 602 (1984), in which the Supreme Court held that, although plaintiffs described their claim as "procedural," *id.* at 615, 620, it was "essentially one requesting the payment of benefits," *id.* at 620.  "In effect, the claims in *Heckler* were claims for benefits, disguised as a procedural challenge." *Day*, 23 F.3d at 1059.  As explained, that is not the situation here.  Even granting

---

(7th Cir. 1991); *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990); *Hyatt v. Heckler*, 807 F.2d 376, 379-380 (4th Cir. 1986).  The Ninth Circuit has also held the same.  *Johnson*, 2 F.3d at 921.

plaintiffs all of the requested relief would in no way guarantee a favorable outcome on their particular redetermination proceedings.

*Third*, plaintiffs' procedural claims are largely constitutional. In particular, Cheryl and Robert raise a procedural due process claim—the same constitutional claim deemed collateral in both *Eldridge*, *see* 424 U.S. at 330-331, and *Cathedral Rock*, *see* 223 F.3d at 364. The same result should obtain here. Whether or not there are challenging line-drawing questions in determining when a *statutory* challenge is structural (as in *Bowen*) or a claim for benefits (as in *Ringer*), constitutional challenges are largely immune from that criticism: Because there is no self-standing constitutional right to disability benefits, any constitutional claim will by definition be collateral to the benefits entitlement.

2.    The district court's jurisdictional ruling rested on a misapprehension of plaintiffs' claims. The court believed that Cheryl and Robert were challenging the "wrongful[] open[ing]" of their cases. Mem. Op. Granting Mot. To Dismiss, RE 33, PageID# 440. Such a challenge would not be collateral, but that is not what Cheryl and Robert argue. They object to the *manner* in which the agency reopened their claims—namely, the failure to present them with the evidence underlying the fraud allegation and an opportunity rebut it. They seek not to block the reopening but to have (among other things) the procedural right to notice of the evidence against them and an opportunity to challenge the fraud allegation. *See* Reply ISO

Mot. To Alter or Amend, RE 37, PageID# 502; *see also supra* pp. 15-16

(describing other aspects of plaintiffs' procedural challenge).

In denying reconsideration, the district court almost corrected its mis-

reading of the complaint, recognizing that plaintiffs had indeed brought some

procedural claims.  Mem. Op. Denying Reconsideration Mot., RE 40, PageID#

528.  The court still did not correctly characterize the claims, however.  Cheryl and

Robert are not asking that ALJs "consider the alleged fraudulent evidence," *id.*,

which the court recognized would not be permitted by 42 U.S.C. §405(u)

(requiring the agency to exclude fraudulent evidence), *id.* at PageID# 529.  Rather,

they seek to challenge, in the redetermination hearings, the logically antecedent

allegation that the evidence *is in fact fraudulent*.  If they were to prove that their

cases were not part of Conn's fraudulent scheme, the medical evidence would not

be tainted, and thus the statutory prohibition would not apply.

In any event, the district court denied reconsideration on the erroneous basis

that plaintiffs' procedural claims had to be "channeled" into the administrative

process.  Mem. Op. Denying Reconsideration Mot., RE 40, PageID## 528-529.

The cases the court relied on for that conclusion—*Illinois Council*; *Ringer*; *Salfi*;

*Michigan Ass'n of Homes & Services for Aging, Inc. v. Shalala*, 127 F.3d 496 (6th

Cir. 1997)—are inapposite because they involved challenges brought under §1331

federal-question jurisdiction only.  As discussed, the Social Security Act forecloses

such jurisdiction, *see supra* pp. 20-21, and hence these cases hold only that these challenges should have been brought under §405(g). This case, by contrast, was brought under §405(g). (Section 1331 jurisdiction was pleaded here in the alternative; plaintiffs do not appeal the district court's rejection of jurisdiction under that section.) And as explained, while §405(g) ordinarily requires exhaustion, courts may excuse exhaustion for certain collateral claims. *See Eldridge*, 424 U.S. at 330-332. Indeed, *Illinois Council*—which the district court emphasized—expressly reaffirmed the *Eldridge* test for satisfying §405(g). *See* 529 U.S. at 14-15, 24. The court thus erred in relying on *Illinois Council* and other §1331 cases to conclude that plaintiffs' claims were not collateral for purposes of §405(g).

### B. Plaintiffs Have Raised A Colorable Claim Of Irreparable Harm Given Their Complete Dependence On Their Disability Benefits For Their Livelihood

For exhaustion to be excused, a plaintiff must "present[] a colorable claim of irreparable harm based on denial of benefits." *Day*, 23 F.3d at 1059. Here, as in *Eldridge*, "because of [plaintiffs'] physical condition and dependency upon the disability benefits, an erroneous termination would damage [them] in a way not recompensable through retroactive payments." 424 U.S. at 331.

Cheryl and Robert will be irreparably harmed in at least two ways. *First*, because they both depend on their disability benefits for medical coverage and

costs, *see supra* pp. 6-7, even a short suspension of benefits pending exhaustion could "aggravate existing conditions," *Day*, 23 F.3d at 1059, and cause a "medical setback," *Bowen*, 476 U.S. at 483.  Were that to occur, retroactive benefits could not make them whole.  *Second*, both depend on their disability benefits for the "necessities of life" other than medicine.  *Day*, 23 F.3d at 1059.  And "[t]he Supreme Court has recognized that 'suffering months of delay in receiving the income on which one has depended for the very necessities of life cannot be fully remedied by the belated restoration of back benefits.'"  *Id.* at 1059-1060 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 428 (1988)).

The district court correctly concluded that plaintiffs satisfied the irreparable-harm prong here, *see* Mem. Op. Denying Reconsideration Mot., RE 40, PageID# 527, stating that "it seems unfair to grant an individual benefits, take them away, and then give them only months or years later," *id.* at PageID# 528.  The court's conclusion was consistent with the Supreme Court's recognition of the need to be "especially sensitive to this kind of harm where the [g]overnment seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place."  *Bowen*, 476 U.S. at 483.

Because Cheryl and Robert satisfy both parts of the *Eldridge* test for
excusing exhaustion, the "final decision" requirement in 42 U.S.C. §405(g) is met,
and the district court has jurisdiction to consider plaintiffs' claims on the merits.

## II.    EXHAUSTION SHOULD BE WAIVED BECAUSE IT WOULD BE FUTILE FOR PLAINTIFFS TO RAISE THEIR CLAIMS IN THE ADMINISTRATIVE PROCESS

Alternatively, the district court has jurisdiction because the exhaustion
requirement should be waived.  Although SSA ordinarily waives exhaustion by not
pressing that defense in litigation, *e.g.*, *Heckler v. Day*, 467 U.S. 104, 111 n.14
(1984), courts can find an implied waiver when the agency has rendered
exhaustion futile, *see Salfi*, 422 U.S. at 765-767; *Mathews v. Diaz*, 426 U.S. 67,
76-77 (1976).  Such futility can take many forms, several of which are met here.

Futility generally occurs when "'there is no reasonable prospect that the
applicant could obtain any relief by pursuing'" the administrative process.
*Manakee Prof'l*, 71 F.3d at 581.  That is certainly true here.  There is no realistic
possibility that SSA will correct the errors of which Cheryl and Robert complain;
indeed, the litigation below confirms the agency's steadfast refusal to accept
plaintiffs' views.  For example, SSA has stipulated that ALJs may not allow
claimants to challenge the fraud allegation.  *See supra* pp. 11-12.  As in *Diaz*, that
stipulation is "tantamount to a decision denying the [claim] and … a waiver of the
exhaustion requirements."  426 U.S. at 76-77.  Because the agency will not

"correct its own errors," *Salfi*, 422 U.S. at 765, it is futile to compel administrative exhaustion.

Futility also arises when the underlying purposes of administrative exhaustion are no being longer served. Those purposes are allowing the agency to "afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Salfi*, 422 U.S. at 765; *see also Briggs v. Sullivan*, 886 F.2d 1132, 1140 (9th Cir. 1989) ("[C]ourts are empowered to find futility where the claimant demonstrates that 'there is nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise.'"). Here, there is no case for agency expertise. Cheryl and Robert are raising principally constitutional challenges, which are the province of the federal courts, not executive agencies. *Compare Califano v. Sanders*, 430 U.S. 99, 109 (1977) ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures[.]"), *with Bowen*, 476 U.S. at 485 (noting the "agency's expertise in administering its own regulations"). Moreover, because plaintiffs facially attack the redetermination process, there is "nothing to be gained" from an administrative record produced by that flawed process. *Bowen*, 476 U.S. at 485. In these circumstances, "further exhaustion would not merely be futile for the applicant, but would also be a commitment of administrative

resources unsupported by any administrative or judicial interest." *Salfi*, 422 U.S. at 765-766.

The district court's conclusion that even futile claims should be channeled through the administrative process rested on *Illinois Council* and related cases. Mem. Op. Denying Reconsideration Mot., RE 40, PageID## 526-527.  As explained, however, these cases are inapposite because plaintiffs bring their claims under 42 U.S.C. §405(g) rather than 28 U.S.C. §1331.  *See supra* pp. 27-28.

The court also incorrectly believed that futility was not a sufficient ground for satisfying the exhaustion requirement.  Mem. Op. Denying Reconsideration Mot., RE 40, PageID# 532.  Both the Supreme Court and this Court have distinguished between *waiving* exhaustion based on futility and *excusing* exhaustion based on irreparable harm and the collateral nature of the claims.  In *Ringer*, for example, the Supreme Court described "waiver" based on futility separately from the two-part *Eldridge* test for excusal.  466 U.S. at 618.  Similarly, in *Manakee Professional*, this Court, after first concluding that a claim was not collateral, analyzed whether exhaustion "may *also* be waived" due to futility.  71 F.3d at 581 (emphasis added).  In any event, even if excusal and waiver are part of a unitary exhaustion analysis, both are satisfied here, for the reasons explained above.  The district court therefore has jurisdiction under 42 U.S.C. §405(g) to consider plaintiffs' claims on the merits.

## CONCLUSION

The district court's judgment should be reversed and the case remanded for

further proceedings.

Respectfully submitted,

/s/ Arpit K. Garg

NED PILLERSDORF
PILLERSDORF, DEROSSETT & LANE
124 West Court Street
Prestonburg, KY  41653
(606) 886-6090

DANIEL S. VOLCHOK
ARPIT K. GARG*
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C.  20006
(202) 663-6000

*Admitted to practice only in New York. Supervised by members of the firm who are members of the District of Columbia bar.*

June 15, 2016

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| Record Entry | Date | Page ID Range | Description |
|---|---|---|---|
| RE 1 | 5/30/2015 | 1-14 | Class Action Complaint |
| RE 1-1 | 5/30/2015 | 15-16 | Exhibit A:  Affidavit of Cheryl Martin |
| RE 1-2 | 5/30/2015 | 17-18 | Exhibit B:  Letter from Social Security Administration to Cheryl Martin re suspension of disability benefits |
| RE 1-4 | 5/30/2015 | 23-24 | Exhibit D:  Affidavit of Robert Q. Martin |
| RE 4-4 | 6/2/2015 | 67-76 | Motion for Temporary Restraining Order Exhibit C:  Affidavit of Jamie Lynn Slone |
| RE 4-5 | 6/2/2015 | 77-85 | Motion for Temporary Restraining Order Exhibit D:  Affidavit of Melinda Lynn Martin |
| RE 11 | 6/16/2015 | 126-142 | Amended Class Action Complaint |
| RE 12 | 6/26/2015 | 145-146 | Plaintiffs' Second Motion for Preliminary Injunction |
| RE 12-1 | 6/26/2015 | 147-149 | Affidavit of Robert Q. Martin |
| RE 12-2 | 6/26/2015 | 150-152 | Affidavit of Cheryl Martin |
| RE 12-3 | 6/26/2015 | 153-155 | Affidavit of Robert C. Johns |
| RE 12-4 | 6/26/2015 | 156-175 | Memorandum in Support of Plaintiffs' Second Motion for Preliminary Injunction |
| RE 15 | 7/17/2015 | 182-209 | Memorandum in Opposition to Plaintiffs' Second Motion for Preliminary Injunction |
| RE 15-1 | 7/17/2015 | 210-214 | Declaration of Beatrice M. Disman |

| Record Entry | Date | Page ID Range | Description |
|---|---|---|---|
| RE 21 | 7/28/2015 | 279-298 | Plaintiffs' Reply to Defendant's Memorandum in Opposition to Plaintiffs' Second Motion for Preliminary Injunction |
| RE 21-1 | 7/28/2015 | 299-303 | Affidavit of Cheryl Martin |
| RE 23-1 | 7/29/2015 | 312-315 | Declaration of Dale Slone |
| RE 25-1 | 8/14/2015 | 321-349 | Memorandum in Support of Defendant's Motion to Dismiss |
| RE 26 | 8/17/2015 | 351-362 | Defendant's Supplemental Memorandum |
| RE 30 | 9/14/2015 | 412-428 | Reply Memorandum in Support of Defendant's Motion to Dismiss |
| RE 30-1 | 9/14/2014 | 429-430 | Declaration of Beatrice M. Disman |
| RE 31 | 10/16/2015 | 433-434 | Plaintiffs' Status Report |
| RE 33 | 11/16/2015 | 436-445 | Memorandum Opinion and Order |
| RE 35 | 11/20/2015 | 447 | Plaintiffs' Motion to Alter or Amend Order and Judgment Entered on November 16, 2015 |
| RE 35-1 | 11/20/2015 | 448-461 | Plaintiffs' Memorandum of Law |
| RE 35-2 | 11/20/2015 | 462-481 | Affidavit of John O. Goss (with Exhibits) |
| RE 36 | 12/11/2015 | 483-499 | Defendant's Memorandum in Opposition to Plaintiffs' Motion to Alter or Amend Order and Judgment Entered on November 16, 2015 |
| RE 37 | 12/22/2015 | 501-515 | Plaintiffs' Reply to Defendant's Memorandum in Opposition to Plaintiffs' Motion to Alter or Amend Order and Judgment |
| RE 40 | 1/4/2016 | 523-533 | Memorandum Opinion and Order |
| RE 41 | 4/20/2016 | 534 | Notice of Appeal |

| Record Entry | Date | Page ID Range | Description |
|---|---|---|---|
| RE 45 | 5/2/2016 | 553-585 | Transcript of Telephone Conference of August 10, 2015 |

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure (FRAP) 32(a)(7)(B)(i) in that, according to the word-count feature of the word-processing program with which it was prepared (Microsoft Word 2010), the brief contains 7,339 words, excluding the portions exempted by FRAP 32(a)(7)(B)(iii) and Sixth Circuit Rule 32(b)(1).

/s/ Arpit K. Garg
ARPIT K. GARG
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C.  20006
(202) 663-6000

June 15, 2016

## CERTIFICATE OF SERVICE

On this 15th day of June, I electronically filed the foregoing using the Court's appellate CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ Arpit K. Garg
ARPIT K. GARG
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C.  20006
(202) 663-6000

June 15, 2016

# ADDENDUM

# ADDENDUM
# TABLE OF CONTENTS

Page

42 U.S.C. § 405(g) ................................................................................1a

42 U.S.C. § 405(h) ...............................................................................2a

42 U.S.C. § 405(u) ...............................................................................2a

# STATUTORY ADDENDUM

## 42 U.S.C. § 405(g) Judicial Review

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.  As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.  The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.  Such

additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.

## 42 U.S.C. § 405(h) Finality of Commissioner's decision

The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

## 42 U.S.C. § 405(u) Redetermination of entitlement

(1)(A) The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits, unless a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud.

(B) When redetermining the entitlement, or making an initial determination of entitlement, of an individual under this subchapter, the Commissioner of Social Security shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence.

(2) For purposes of paragraph (1), similar fault is involved with respect to a determination if—

    (A) an incorrect or incomplete statement that is material to the determination is knowingly made; or

(B) information that is material to the determination is knowingly concealed.

(3) If, after redetermining pursuant to this subsection the entitlement of an individual to monthly insurance benefits, the Commissioner of Social Security determines that there is insufficient evidence to support such entitlement, the Commissioner of Social Security may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments.